1    **SPINELLI, DONALD & NOTT**
     A Professional Corporation
2    DOMENIC D. SPINELLI (SBN: 131192)
     601 University Avenue, Suite 225
3    Sacramento, CA 95825
     Telephone: (916) 448-7888
4    Facsimile: (916) 448-6888

5    Attorneys for Defendant/Judgment Creditor
     SAN JUAN UNIFIED SCHOOL DISTRICT
6

7
                    UNITED STATES DISTRICT COURT
8
                 FOR THE EASTERN DISTRICT OF CALIFORNIA
9

10
     ANTHONY FERRANTINO,                    Case No. 2:20-CV-00808-KJN (PS)
11
                    Plaintiff,              **NOTICE OF JUDGMENT LIEN**
12
            vs.
13
     SAN JUAN UNIFIED SCHOOL DISTRICT,
14
                    Defendant.             **[FEE EXEMPT PURSUANT TO
15                                          GOVERNMENT CODE § 6103]**

16

17   TO THE COURT AND PLAINTIFF IN PRO SE, ANTHONY FERRANTINO:

18          PLEASE TAKE NOTICE that on September 21, 2020, this Court entered Judgment in favor

19   of SAN JUAN UNIFIED SCHOOL DISTRICT, Judgment Creditor, for monetary sanctions in the

20   amount of $500.00 and against Judgment Debtor, ANTHONY FERRANTINO. (See Exhibit A,

21   Order and Judgement, attached hereto).

22   Dated:  December 16, 2020              **SPINELLI, DONALD & NOTT**

23

24                                         By: _/s/ Domenic D. Spinelli_____
                                               DOMENIC D. SPINELLI
25                                             Attorneys for Defendant/Judgment Creditor
                                               SAN JUAN UNIFIED SCHOOL DISTRICT
26                                             c/o SPINELLI DONALD & NOTT

27

28

SPINELLI, DONALD
& NOTT

1

## PROOF OF SERVICE

2

Eastern District of California Case No.: 2:20-CV-00808-JAM-KJN
*Ferrantino vs San Juan Unified School District, et al.*

3

4

    I am a citizen of the United States, employed in the County of Sacramento, State of California.  My business address is 601 University Avenue, Suite 225, Sacramento, CA 95825.  I am over the age of 18 and not a party to the above-entitled action.

5

6

    I am readily familiar with Spinelli, Donald & Nott's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle.  Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business.  (Code Civ. Proc., § 1013a(3) or Fed.R.Civ.P.5(a) and 4.1.)

7

8

9

    On the date set forth below, I caused the within **NOTICE OF JUDGMENT LIEN,** the original of which was produced on recycled paper, to be served via:

10

11

**[XX]**   **FIRST CLASS MAIL**--

    Placed in the United States Mail at Sacramento, California in an envelope with postage thereon fully prepaid to the person(s) at the address(es) set forth below:

12

13

14

| | |
|---|---|
| Anthony Ferrantino<br>1331 Crane Street, Apt. 402<br>Menlo Park, CA 94025<br>T: 650.614.0846<br>T: 916.972.1204 | *Plaintiff*<br>**IN PRO PER** |

15

16

17

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on December 16, 2020, at Sacramento, California.

18

19

                     */s/ Jessica Patton*
                     Jessica Patton

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

**JUDGMENT IN A CIVIL CASE**

**ANTHONY FERRANTINO,**

CASE NO: **2:20−CV−00808−KJN**

v.

**SAN JUAN UNIFIED SCHOOL DISTRICT,**

―――――――――――――――――――――――

**Decision by the Court.** This action came before the Court. The issues have been tried, heard or decided by the judge as follows:

IT IS ORDERED AND ADJUDGED

**THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER FILED ON 9/21/2020**

**Keith Holland**
Clerk of Court

ENTERED:  **September 21, 2020**

by: _/s/  A. Kastilahn_____
Deputy Clerk

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY FERRANTINO,                          No.  2:20-cv-808-KJN PS

12                  Plaintiff,                     ORDER

13          v.                                     (ECF Nos. 12, 13)

14   SAN JUAN UNIFIED SCHOOL DIST.,

15                  Defendant.

16

17          Plaintiff Anthony Ferrantino, proceeding pro se, alleges that defendant San Juan Unified

18   School District denied him a position in violation of the Age Discrimination in Employment Act

19   ("ADEA").[1]  (ECF No. 1.)  San Juan now:  (I) moves to dismiss, asserting the complaint is

20   deficient in its failure to plead facts plausible to state a claim (ECF No. 12-1), and (II) moves for

21   sanctions under Federal Rule of Civil Procedure 11, asserting Ferrantino's allegations are

22   "blatantly false" because he was only employed as a substitute teacher, chose not to accept an

23   assignment, and voluntarily resigned (ECF No. 13-1).  Ferrantino filed an untimely first amended

24   complaint, and generally opposed dismissal and sanctions.  (ECF Nos. 11, 16.)

25          As set forth below, the court GRANTS San Juan's motion to dismiss, DENIES Ferrantino

26   leave to amend, and GRANTS IN PART San Juan's motion for sanctions.

27   ───────────────

28   [1] The parties consented to the jurisdiction of a magistrate judge for all purposes, and thereafter the
     action was assigned to the undersigned for all further proceedings.  (ECF Nos. 7, 9, 10.)

                                                    1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## BACKGROUND[2]

Ferrantino is a 73-year-old male who holds a teaching credential to teach in the San Juan school district.  (ECF No. 1 at 5.)  In 2019, Ferrantino was denied a position at San Juan, and the person hired was substantially younger.  (Id.)  Ferrantino prays for $50,000 in damages.  (Id.)

Ferrantino was approved as a substitute teacher with the district in February 2018.  (ECF No. 11 at 5.)  Sometime prior to January 2019, Ferrantino's ability to select assignments was altered.  (Id. at 7-14.)  After this, Ferrantino was offered positions in the first and second grade classrooms 35 times, but was "not available."  (Id. at 15.)  At some point during his employment with San Juan, Ferrantino was denied a substitute position, which was given to Jeremiah Ewing, a "substantially younger person."  (Id. at 6.)  Ferrantino was also denied the ability to substitute in the library on one day, and on another day was denied a key to the bathroom at a school.  (Id. at 18-19.)  Ferrantino complained to district officials about this reclassification, to no avail.  (Id. at 8.)  Ferrantino contends this reclassification is a violation the ADEA, insomuch as the statute makes it unlawful for an employer to discriminatorily "limit, segregate, or classify his employees . . . because of such individual's age[.]"  (Id. at 23) (citing 29 U.S.C. § 623(a)(2).)

Ferrantino worked as a substitute teacher for San Juan from March of 2018 through January 10, 2019.  (ECF No. 13-3 at ¶ 7.)  Substitute teachers are provided a list of available jobs (either via phone call or website), and can select which jobs they want to accept.  (Id.)  During this time, Ferrantino declined 176 assignments, accepted 18, and worked 9 days.  (Id.)  On February 6, 2019, Ferrantino submitted his voluntary resignation.  (Id. at ¶ 5.)

---

[2] The alleged facts in the first paragraph derive from the complaint, and are considered for purposes of the motion to dismiss.  (ECF No. 1.)  These facts are construed in the light most favorable to plaintiff—the non-moving party.  Faulkner v. ADT Sec. Servs., 706 F.3d at 1019. However, conclusory factual allegations or legal conclusions have been omitted, as their truth is not assumed.  Paulsen, 559 F.3d at 1071.  The second paragraph asserts additional facts, as alleged in Ferrantino's proffered "first amended complaint" filing as well as in his opposition briefing.  (ECF Nos. 11, 16.)  The court considers these facts for purposes of whether Ferrantino should be granted leave to amend.  Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). The last paragraph contains facts the court derives from San Juan's filings in association with its motion for sanctions, which are construed in Ferrantino's favor.  (ECF No 13-1 through -4.)  See, e.g., Burnette v. Godshall, 828 F. Supp. 1439, 1447 (N.D. Cal. 1993) ("[W]hen a court considers a request for sanctions, it must resolve all doubts in favor of the signer of the pleading or paper.")

1

### DISCUSSION

2      Prior to resolving San Juan's motions, the court must resolve the issue of Ferrantino's

3   filing entitled "first amended complaint."  Under Rule 15(a)(1),[3] a party may amend its pleading

4   once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to

5   which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days

6   after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Outside of those

7   timeframes, "a party may amend its pleading only with the opposing party's written consent or the

8   court's leave.  Rule 15(a)(2).  "The court should freely give leave when justice so requires."  Id.

9   An amended complaint supersedes the original complaint and renders it without legal effect.

10   Lacey v. Maricopa County, 693 F.3d 896, 925 (9th Cir. 2012).

11      Here, Ferrantino filed his complaint in late April 2020, and San Juan waived service in

12   early June.  (ECF Nos. 1, 10.)  Ferrantino filed his "first amended complaint" on July 30, 2020,

13   and on August 3, San Juan filed its motion to dismiss.  (ECF No. 12, 13.)  Ferrantino's opposition

14   requests that the court "hear this amended complaint."  (ECF No. 16 at 30.)

15      Though Ferrantino's filing asserts additional facts regarding his allegations, and his

16   opposition to the motion to dismiss heavily references this filing, the court cannot find

17   Ferrantino's new filing to be the operative pleading.  Rule 15 allows for amendment as a matter

18   of right only within 21 days after service or a responsive pleading (such as a motion to dismiss).

19   Ferrantino's filed "first amended complaint" was filed well outside of the 21-day period after

20   service, and days before San Juan filed its motion to dismiss.  Thus, Ferrantino's filing is not

21   immediately effective, and so the court must review San Juan's motion to dismiss on the merits.

22      However, this is not to say Ferrantino's "first amended complaint" is without any value.

23   As leave to amend should be granted freely, the court will also consider the "first amended

24   complaint" filing after resolving the motion to dismiss.  See, e.g., Borisov v. Alamo Rent a Car,

25   2018 WL 3971958 (W.D. Wash. Aug. 20, 2018) (denying defendant's motion to strike untimely

26   amended complaint solely because it was filed a day before defendant filed a motion to dismiss,

27   and construing "amended complaint" as a motion to amend).

28

---

[3] Citations to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

**I.   The original complaint fails to state a claim, and amendment is denied on futility, bad faith, and prejudice grounds.**

Legal Standard for Pleadings and Motions to Dismiss

Rule 8(a) requires that a complaint be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."  A responding party may present certain defenses to a complaint by motion, including (under Rule 12(b)(6)) challenges to the sufficiency of the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).

When a court considers whether a complaint sufficiently states a claim upon which relief may be granted, all well-pled factual allegations in the complaint must be accepted as true, and the complaint must be construed in the light most favorable to the non-moving party.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  Thus, to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  Simply, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  Plausibility means pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Pro se pleadings are to be liberally construed.  Hebbe v. Pliler, 627 F.3d 338, 342 & fn.7 (9th Cir. 2010) (liberal construction appropriate even post-Iqbal).  A pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action, unless no amendment can cure the defect.  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995); see also Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996) (if amendment

4

1 would be futile, no leave to amend need be given).  Although the court may not consider an

2 opposition brief to supply missing information in a challenged pleading, it may consider

3 allegations raised in opposition papers in deciding whether to grant leave to amend.  Cf.

4 Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) with Broam v.

5 Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

6      Analysis

7      Ferrantino's sole claim arises under the Age Discrimination in Employment Act, which

8 makes it unlawful for an employer "to limit, segregate, or classify [] employees in any way which

9 would deprive or tend to deprive any individual of employment opportunities or otherwise

10 adversely affect his status as an employee, because of such individual's age . . . ."  29 U.S.C.

11 § 623(a)(2).  To prevail on a claim for age discrimination under the ADEA, a plaintiff must

12 ultimately prove that age was the "but-for" cause of the employer's adverse action.  Gross v. FBL

13 Financial Services, Inc., 557 U.S. 167 (2009).

14      The Ninth Circuit analyzes ADEA cases using the framework articulated in McDonnell

15 Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a

16 plaintiff must carry the initial burden to establish a prima facie case that creates an inference of

17 discrimination.  Id. at 802.  If the plaintiff establishes a prima facie case, an inference of

18 discrimination arises, and the burden shifts to the employer to produce a legitimate,

19 nondiscriminatory reason for its employment action.  Id.  If the employer does so, the burden

20 shifts back to the employee to prove that the employer's explanation is a pretext for

21 discrimination.  Id.

22      To establish a prima facie case under the ADEA, the following elements are analyzed:

23 that plaintiff (1) was a member of a protected class [above age 40]; (2) was performing his job in

24 a satisfactory manner; (3) was subject to an adverse employment action; and (4) was replaced by

25 a substantially younger employee with equal or inferior qualifications.  Allen v. Centillium

26 Commc'ns, Inc., 2008 WL 916976, at *6 (N.D. Cal. Apr. 3, 2008) (citing Wallis v. J.R. Simplot

27 Co., 26 F.3d 885, 891 (9th Cir. 1994)).  However, "a plaintiff in an ADEA case is not required to

28 plead a prima facie case of discrimination in order to survive a motion to dismiss."  See Sheppard

1    v. David Evans & Assoc., 694 F.3d 1045, 1050 (9th Cir. 2012) (reaffirming the application of

2    Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508–11 (2002), even post Twombly and Iqbal).

3    Instead, the Ninth Circuit simply requires the complaint state "sufficient factual matter, accepted

4    as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662, 678 (2009);

5    see also Sablan v. A.B. Won Pat Int'l Airport Auth., 2010 WL 5148202, at *4 (D. Guam Dec. 9,

6    2010) ("The idea, then, is not that Swierkiewicz has been overruled, but rather that, after

7    Twombly and Iqbal, an employment discrimination plaintiff must get closer to alleging a prima

8    facie case than was necessary a few years ago.").

9            Here, it is clear from the face of the original complaint that Ferrantino has failed to allege

10   sufficient facts to state a claim under the ADEA.  As noted above, the original complaint contains

11   almost no details, only indicating that Ferrantino is 73 years old, holds a teaching credential, and

12   was denied a position with San Juan.  (ECF No. 1 at 5.)  Ferrantino conclusory alleges that a

13   "substantially younger" individual was hired, without providing any information about this

14   person or his/her age—much less what the position was or the circumstances surrounding San

15   Juan's denials.  (Id.)  A plaintiff cannot offer conclusory assertions or labels in hopes of

16   overcoming a motion to dismiss for failure to state a claim under Swierkiewicz, Twombly, and

17   Iqbal.  See Austin v. Univ. of Oregon, 925 F.3d 1133, 1138 (9th Cir. 2019) ("Just saying so is not

18   enough.  A recitation of facts without plausible connection to [age] is not cured by labels and

19   conclusory statements about [] discrimination.").  For these reasons, Ferrantino's complaint (ECF

20   No. 1) must be dismissed.

21           Leave to Amend

22           Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading

23   only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

24   This rule further provides that "[t]he court should freely give leave when justice so requires."  Id.

25   The Ninth Circuit Court of Appeals has stated that "requests for leave should be granted with

26   'extreme liberality,'" especially with pro se litigants.  Moss v. U.S. Secret Serv., 572 F.3d 962,

27   972 (9th Cir. 2009) (citation omitted).  However, leave to amend may be denied if the court finds

28   "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."

1   Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citations and

2   quotation marks omitted); AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951

3   (9th Cir. 2006); see also Cahill, 80 F.3d at 339 (if amendment would be futile, no leave to amend

4   need be given).  The court may consider assertions made in opposition briefing and at hearings

5   when deciding whether to grant leave to amend.  See Broam, 320 F.3d at 1026 n.2; see also Davis

6   v. Nationstar Mortg., 2016 WL 7178466, at *15 (E.D. Cal. Dec. 9, 2016) (denying leave to amend

7   where, among other things, "plaintiffs' representations at the hearing [made] it clear that

8   amendment would not cure the deficiencies.").

9        Here, Ferrantino's original complaint appeared to concern his alleged termination in

10   February of 2019.  (See ECF No. 1 at 5.)  Conversely, Ferrantino's opposition briefing, proposed

11   "first amended complaint," and representations at the September 10th hearing indicated his

12   ADEA claim primarily concerned the district's alleged "revision" of his status as a substitute

13   teacher.  (See ECF No. 16 at 9-30.)  The "first amended complaint" filing alleges district officials

14   "segregated" him to teach only first and second grade classes "for which [he was] not available,"

15   and this segregation was because of his age.  (ECF No. 16 at 19-20, 23.)  Additionally,

16   Ferrantino's opposition brief cites to a provision of the ADEA that makes it unlawful for an

17   employer "to limit, segregate, or classify his employees in any way which would deprive or tend

18   to deprive any individual of employment opportunities or otherwise adversely affect his status as

19   an employee, because of such individual's age."  (Id. at 22) (citing 29 U.S.C. § 623(a)(2)).)

20   Finally, the filing references another substitute, a Mr. Ewing, who Ferrantino alleges was given a

21   substitute job and who was a "substantially younger person."  (Id. at 16.)

22        Prior to the hearing, the court theorized that based on Ferrantino's filings, a claim might

23   be cognizable under subsection 2 of Section 623 of the ADEA.  However, the undersigned was

24   still concerned that Ferrantino's proposed amended complaint had failed to provide plausible

25   facts to support any ADEA claim, so the court provided him with numerous opportunities to

26   clarify his position at the September 10, 2020 hearing.  Unfortunately, Ferrantino could not offer

27   any additional plausible facts to support this theory.  What's more, as the hearing progressed it

28   became clear not only that amendment would be futile, but that Ferrantino was acting in bad faith

1  in bringing his lawsuit.  See Cafasso, 637 F.3d at 1058 (leave to amend may be denied with

2  "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay.").

3       First, Ferrantino's proposed amended complaint states that he met with district officials in

4  January of 2019, including a Ms. Jhatu, who (it appears) oversees management of the substitute-

5  teacher program.  Ferrantino's filing indicates Ms. Jhatu "segregated" Ferrantino in the system so

6  that he would receive substitute offers at elementary schools only.  However, when the court

7  inquired as to how this alleged segregation occurred, Ferrantino instead admitted that Ms. Jhatu

8  informed him he would be receiving no offers to substitute within the district—not that Ms. Jhatu

9  was "reclassifying" him for elementary-only work.  As to the allegation that Ferrantino was only

10 receiving substitution offers for first and second grade classrooms, Ferrantino admitted that he

11 believed this was due to a clerical error—that the one elementary school who called him with

12 offers did so unaware he had been removed from all eligibility lists.  Ferrantino also indicated

13 most of the calls from this elementary school came after he submitted his voluntary resignation

14 with San Juan in February of 2019, and that sometime in January 2019 he stopped accepting

15 substitute work with San Juan because he anticipated quitting.

16      Second, and related, Ferrantino's proposed amended complaint alleges he was not

17 "available" to substitute in any first or second grade classrooms.  (ECF No. 16 at 20.)  However,

18 at the hearing Ferrantino stated it was simply his choice to decline those offers based on his

19 personal preferences—that since he began substituting with the district, he would only accept

20 positions at the high school level.  Except, this also turned out to be somewhat untrue, as at least

21 once Ferrantino admitted he accepted a substitute position at the middle school Edison Language

22 Institute (which he confusingly said he did for multiple days, but also indicated he apparently

23 walked out of shortly after arriving at the campus).[4]

24      Third, Ferrantino's proposed amended complaint states that at Encina High School, he

25 was denied a substitute position which was given to a substantially younger person, a Mr. Ewing.

26

27 ─────────────
   [4] This encounter was also apparently the subject of a "bathroom key" incident (ECF No. 16 at
   27), which the undersigned finds wholly frivolous and not subject to the court's jurisdiction.

28 Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir. 1984).

1   (ECF No. 16 at 14.)  However, at the hearing Ferrantino admitted that this instance was

2   disconnected from his "segregation" and his meeting with Ms. Jhatu in January 2019.  Instead,

3   Ferrantino indicated that early in his tenure as a substitute, he would sometimes receive phone

4   calls from a secretary at Encina High, but that over time those positions were given to Mr. Ewing.

5   However, Ferrantino also stated he informed San Juan he did not want to receive phone calls

6   regarding substitute positions, and preferred to check the website when he searched for available

7   substitute jobs.  Ferrantino could not say how he knew Mr. Ewing received more calls, but only

8   speculated that Ewing had received more calls and accepted more assignments.

9          Fourth and finally, Ferrantino's proposed amended complaint references Section 623(a)(2)

10  of the ADEA, which prohibits limiting, segregating, or classifying employees "because of an

11  individual's age."  (ECF No. 16 at 23.)  When the undersigned asked Ferrantino (on multiple

12  occasions) what facts he had to support his allegations that San Juan officials took any of these

13  actions <u>because of</u> his age, Ferrantino replied he had none.  Ferrantino stated he never inquired as

14  to why Ms. Jhatu stopped sending substitution notices out to him, nor why the Encina High

15  secretary stopped calling him.  Instead, Ferrantino's response was to merely quote the text of the

16  statute that states he should not have been "segregated."  This is a textbook example of a

17  conclusory assertion, which is not enough to sustain a claim in federal court.  <u>Austin</u>, 925 F.3d at

18  1138 ("Just saying so is not enough.  A recitation of facts without plausible connection to [age] is

19  not cured by labels and conclusory statements about [] discrimination.").

20         The court generally provides a great deal of latitude with pro se litigants, cognizant of

21  their unfamiliarity with the legal system.  <u>See Moss</u>, 572 F.3d at 972.  However, after inquiring

22  into the facts of Ferrantino's case at the hearing, it is eminently clear he is deliberately attempting

23  to provide as bare bones a pleading as possible, and deliberately obfuscating those facts he

24  asserts, in order to improperly manufacture a discrimination claim.  Allowing the filing of

25  Ferrantino's proposed first amended complaint would be an exercise in futility, as it relies on

26  conclusory and purposefully-muddled assertions that cannot be cured by amendment.  <u>Cahill</u>, 80

27  F.3d at 339 (allowing for denial of leave to amend where amendment would be futile); <u>see also,</u>

28  <u>e.g.</u>, <u>Nagle v. Vill. of Calumet Park</u>, 554 F.3d 1106, 1117 (7th Cir. 2009) (finding that a

plaintiff's "subjective impression about the desirability of [a] position . . .is insufficient to show

discriminatory intent.").[5]  Further, allowing amendment will prejudice San Juan, as it would

require further rounds of motions on claims for which there is no factual basis.  See, e.g., Weddel

v. Hochman, 107 F.3d 878 (9th Cir. 1997) (affirming denial of leave to amend where prejudice to

defendant would result from extended litigation).  Finally, and most saliently, based on many of

Ferrantino's representations at the hearing, it appears he has filed his complaint (and proposed

first amended complaint) in bad faith.  See United States v. Manchester Farming P'ship, 315 F.3d

1176, 1185 (9th Cir. 2003) ("[B]ad faith . . .implies the conscious doing of a wrong because of

dishonest purpose or moral obliquity; [I]t contemplates a state of mind affirmatively operating

with furtive design or ill will.").  Ferrantino openly admitted at the hearing that he has no facts to

support his assertion that he was reclassified because of his age, that he believes his placement on

a "first or second grade substitute only" list was a clerical error, and that ultimately it was his

choice not to accept any substitute positions offered—as is apparently the case for all substitute

teachers who work for San Juan.  These facts are core to his ADEA allegations, and in some cases

directly contradict his assertions in his filings.

Ferrantino's filings appear designed to obscure the truth about the facts of his case, as

demonstrated by his admissions before the court and his noted desire to "get to discovery."  True,

the federal pleading standards only require notice of a plaintiff's claims to survive a motion to

dismiss, but this claim must be based on plausible facts asserted after a reasonable inquiry into

their evidentiary support.  See Fed. R. Civ. P. 11; Griggs v. Pace Am. Grp., Inc., 170 F.3d 877,

881 (9th Cir. 1999) ("[A]mendment should be permitted unless it will not save the complaint or

---

[5] Ferrantino has brought multiple ADEA claims against former employers, and has been
counseled on federal pleading standards by various courts in this district.  See, e.g., Ferrantino v.
Yolo County Transportation Dist., 2:14-cv-02590-JAM-DAD at ECF No. 4 (dismissing case with
leave to amend, advising Ferrantino against relying on conclusions or formulaic recitation of the
elements, and noting the dearth of any facts needed to support his claims); Ferrantino v. World
Private Security, Inc., 2:18-cv-02338-KJM-DB at ECF No. 3 (advising Ferrantino on the need for
plausible allegations of age discrimination for any ADEA claim); Ferrantino v. Sacramento
County Office of Education, 2:18-cv-03063-DB at ECF No. 33 (informing Ferrantino, again,
about pleading standards and ADEA claim standards in an order filed one month prior to the
instant case).  These courts' orders providing instruction to plaintiff indicate that although
Ferrantino is proceeding pro se, he has been exposed to federal pleading standards.

the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories . . . ."); see also Gillette v. Malheur Cty., 2016 WL 3180228, at *13 fn. 15. (D. Or. May 3, 2016) (leave to amend denied in part on bad faith grounds where plaintiffs offered conflicting accounts of key events, finding the apparent lack of a good faith basis for making allegations to be "troubling") aff'd, 737 F. App'x 811 (9th Cir. 2018) ("The district court's concerns that [p]laintiffs were acting in bad faith were justified and further reinforce the decision to dismiss with prejudice.").  Thus, for reasons of futility, bad faith, and prejudice, the court denies leave to amend.  Cafasso, 637 F.3d at 1058.

**II.    San Juan's sanctions motion is reasonable, but is reduced given Ferrantino's status.**

Alongside the motion to dismiss, San Juan moved for a court order sanctioning Ferrantino. (ECF No. 13.)  San Juan asserts that Ferrantino made multiple assertions in his original complaint that were factually baseless and, in some instances, directly contrary to the underlying facts at issue (as evidenced by Ferrantino's employment records and employment history).  San Juan stated that it provided Ferrantino with notice of its intent to move for sanctions in early July, 2020, but that Ferrantino refused to correct his pleadings.  San Juan seeks $3,800 in attorney's fees in connection with its motion to dismiss and motion for sanctions.

Ferrantino responded to San Juan's motion by appending his EEOC Complaint, and asserting the EEOC erred in transcribing the year of his hiring (2019 in the EEOC Complaint, 2018 in the proposed amendment).  (ECF No. 16 at 2-5.)  Ferrantino also maintained the original complaint should have read that Ferrantino was discriminated against "on or before February 6, 2019" when San Juan "revised . . . his profile on the eligibility list."  (Id. at 6.)  Ferrantino then concluded that "the challenged paper is corrected."  (Id. at 7.)

In San Juan's reply, it noted that even if the EEOC erred in transcribing Ferrantino's allegations, Ferrantino knowingly repeated the same error in his original complaint.  (ECF No. 19.)  San Juan further noted Ferrantino's failure to address its remaining arguments concerning "demonstrably false" assertions in his pleadings, and repeated its request for attorneys' fee sanctions.

///

<u>Legal Standard</u>

Federal Rule of Civil Procedure 11 provides in part that:

> By presenting to the court a pleading, written motion, or other paper, an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, <u>formed after an inquiry reasonable under the circumstances</u>: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument . . . ; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b) (emphasis added).  Rule 11 "deters 'baseless filings' by requiring a 'reasonable inquiry' that there is some plausible basis for the theories alleged." <u>Strom v. United States</u>, 641 F.3d 1051, 1059 (9th Cir. 2011).  The requirements of Rule 11 apply equally to pro se litigants.  <u>See</u> <u>Simpson v. Lear Astronics Corp.</u>, 77 F.3d 1170, 1177 (9th Cir. 1996).

When the primary focus of Rule 11 motion is the complaint, "a district court must conduct a two-prong inquiry to determine:  (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the [filer] has conducted a reasonable and competent inquiry before signing and filing it." <u>Holgate v. Baldwin</u>, 425 F.3d 671, 676 (9th Cir. 2005) (quoting <u>Christian v. Mattel, Inc.</u>, 286 F.3d 1118, 1127 (9th Cir. 2002)); <u>see also</u> <u>Moore v. Keegan Mgmt. Co.</u>, 78 F.3d 431, 434 (9th Cir. 1996) ("The word 'frivolous' . . . denote[s] a filing that is both baseless and made without a reasonable and competent inquiry.'")  The standard guiding Rule 11 sanctions is one of objective reasonableness.  <u>Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.</u>, 498 U.S. 533, 551 (1991).

Rule 11 grants courts the power to sanction an offending filer.  Fed. R. Civ. P. 11(c)(1).  If a party intends to move for sanctions, it must first present its arguments to the offending party and allow for correction within 21 days after service.  Fed. R. Civ. P. 11(c)(2).  Rule 11 sanctions may include an "award to the prevailing party [for] the reasonable expenses, including attorney's fees, incurred for the motion." <u>Id.</u>  Any sanction must be "limited to what suffices to deter repetition of the conduct," and may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

1     <u>Analysis</u>

2          As noted above, the court has extensively reviewed Ferrantino's pleadings, San Juan's

3     motions, and the briefs of the parties, and has also considered Ferrantino's assertions made at the

4     September 10, 2020 hearing.  Based on these, the court finds Ferrantino has intentionally violated

5     Rule 11 through his conduct in this litigation, and finds an order directing him to pay San Juan's

6     reasonable attorney's fees to be an appropriate sanction.

7          First, Ferrantino asserted in the original complaint that "in 2019 [San Juan] denied

8     Ferrantino job [sic] and . . . gave job to substantially younger person," and that San Juan

9     "deny[ed] Ferrantino employment for period 2018-2019."  (ECF No. 1 at 5.)  However, the court

10    notes how Ferrantino directly contradicted the complaint's assertions when he agreed at the

11    hearing that he was hired as a substitute teacher, voluntarily declined to accept assignments on

12    many occasions, last accepted a substitute position in January of 2019, and voluntarily resigned in

13    February 2019 "to accept a new/better job."  (<u>See</u> ECF No. 13-3.)  Second, Ferrantino

14    acknowledged his EEOC Complaint contains errors, but contended any error was the fault of the

15    EEOC transcriber and not his.  However, Ferrantino repeated those errors in filing his original

16    complaint without correcting them.  (<u>Cf.</u> ECF No. 1 at 5; <u>with</u> ECF No. 16 at 3.)  Third, San Juan

17    notes that when defense counsel contacted Ferrantino to inform him of the defects and of its

18    intent to move for sanctions, Ferrantino refused to correct his pleadings, thus necessitating the

19    motion to dismiss and motion for sanctions.  (ECF No. 13-4.)  San Juan argues that these facts

20    show sanctions are warranted against Ferrantino under Federal Rule of Civil Procedure 11.

21         The court agrees with San Juan that these three instances demonstrate Ferrantino's

22    violation of Rule 11.  The Rule requires that by filing pleadings with the court, "an . . .

23    unrepresented party certifies that to the best of the person's knowledge, information, and belief,

24    formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have

25    evidentiary support or, if specifically so identified, will likely have evidentiary support after a

26    reasonable opportunity for further investigation or discovery[.]"  Fed. R. Civ. P. 11(b).

27    Ferrantino could have easily verified his employment dates, alleged facts in conformity with his

28    employment record, and explained how the EEOC's transcription contained an alleged error.

1   Ferrantino did not, and this failure implicates his duty to conduct a reasonable inquiry into the

2   facts before composing and filing his original complaint.  Pleadings not only provide a defendant

3   of fair notice of the claims, but also provide a plaintiff the opportunity to be reasonably certain

4   that the facts asserted have some evidentiary support.  Further, San Juan followed Rule 11(c)(2)

5   in notifying Ferrantino of the original complaint's errors and providing him time to correct the

6   pleadings before filing its motions.  Ferrantino chose not to do so until after the safe harbor period

7   expired, which necessitated San Juan's formal motions (and corresponding attorney's fees).

8        However, when the court received San Juan's motion for sanctions, it did not want to

9   jump to conclusions about Ferrantino's original complaint.  Granting Ferrantino the benefit of the

10  doubt, it appeared possible that Ferrantino's assertions in the complaint were a combination of

11  mere clerical errors and confused pleadings common to pro se litigants.  Compare Rule 11

12  advisory committee's notes, 1983 revisions ("Amended Rule 11 continues to apply to anyone who

13  signs a pleading, motion, or other paper.  Although the standard is the same for unrepresented

14  parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to

15  take account of the special circumstances that often arise in pro se situations."); with 1993

16  revisions ("The rule retains the principle that attorneys and pro se litigants have an obligation to

17  the court to refrain from conduct that frustrates the aims of Rule 1.")  It also appeared by

18  Ferrantino's opposition brief and (untimely) amended complaint that he was attempting to clarify

19  his legal theories and provide San Juan with more facts to support those claims.  See, e.g., Yack

20  v. Washington Mut. Inc., 2008 WL 3842918, at *5 (N.D. Cal. Aug. 14, 2008) (no sanctions

21  against pro se plaintiff where representations in original complaint, the complexity of bankruptcy

22  law and issues of standing, were not unreasonable mistakes).  Thus, the court entered into the

23  September 10th hearing considering Ferrantino's "special circumstances" as a pro se litigant.

24  United Nat'l Ins. Co. v. R & D Latex Corp., 242 F.3d 1102, 1117 (9th Cir. 2001) (holding that if

25  there is some "plausible basis," even a weak one, for the arguments advanced, then Rule 11

26  sanctions are improper.").

27        However, as noted above regarding the denial of leave to amend, Ferrantino's

28  representations at the hearing indicated to the court that he was acting in bad faith in bringing his

1  claims against San Juan.  Ferrantino openly admitted at the hearing that he has no facts to support

2  his assertions that he was reclassified because of his age, that he believed his placement on a

3  "first or second grade substitute only" list was essentially a clerical error, and that ultimately it

4  was his choice not to accept any substitute positions offered (as is apparently the case for all

5  substitute teachers who work for San Juan).  While some leeway can be granted to pro se litigants

6  in pleading their claims, it is a fundamental precept of any ADEA claim are that the defendant

7  must have <u>taken an action</u> against the plaintiff <u>because of his age</u>.  <u>See</u> 29 U.S.C. § 623(a)(2)

8  (making it unlawful to "limit, segregate, or classify [] employees . . . because of such individual's

9  age . . . .");  <u>Gross</u>, 557 U.S. 167 (2009).  It is objectively unreasonable for a litigant to assert an

10  ADEA claim when the plaintiff admits he has no facts to support his allegation that any district

11  official acted against him because of his age.  Ferrantino essentially admits his ADEA claim is

12  baseless, and the ADEA's "but-for" requirement is easily verified by simply reading the text of

13  the statute (which Ferrantino quotes at length in his opposition papers).[6]  When viewed through

14  this lens, then, many of Ferrantino's other assertions at the hearing (voluntarily declining to

15  accept substitute positions, elementary school's clerical error in calling him after he submitted his

16  resignation) appear part of a pattern to obfuscate the facts asserted in his filings.  This pattern also

17  makes the court highly suspect of Ferrantino's asserted "errors" in his original complaint—that

18  they are not just mere errors made by the EEOC, for example, but further examples of his

19  obfuscation.  In sum, Ferrantino's facts asserted in the complaint, coupled with his assertions at

20  the hearing, call for sanctions to deter any such future conduct.  <u>See, e.g.</u>, <u>Wiideman v. Ignacio</u>,

21  999 F.2d 546 (9th Cir. 1993) (no abuse of discretion in sanctioning pro se plaintiff who made

22  spurious and baseless claims without conducting a competent inquiry); <u>Marcucci v. Downs</u>, 983

23  F.2d 1076 (9th Cir. 1992) (finding no abuse of discretion in court's sanction, where pro se

24  plaintiff admitted facts that he "had previously contested" during the proceedings).

25          The court now turns to what sanction is sufficient to deter future conduct.  In cases where

26  a party seeks an award of attorneys' fees as a sanction, "the court 'must cast a critical eye on the

27  ───────────────

28  [6] And, in fact, multiple courts in this district *have* counseled him on how to bring an ADEA claim
   in federal court.  <u>See</u> fn. 5, above.

reward request,' which means that the fees and expenses requested must be scrutinized carefully for reasonableness by the district judge." Corrigan v. Unknown King Cty. Deputy #1, 2006 WL 3091210, at *2 (W.D. Wash. Oct. 27, 2006) (quoting 5A Chas. A. Wright, et al., Federal Practice & Procedure § 1336 .3 (3d ed. 2004)).  "[A] court can properly consider plaintiff's ability to pay monetary sanctions as one factor in assessing sanctions." Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994); see also Advisory Committee Notes to the 1993 amendments to Rule 11 (noting "partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources").

      Here, counsel for San Juan requests a monetary sanction of $3,800 be entered against Ferrantino "to remedy the detriment [San Juan] has endured" in having to respond to Ferrantino's original complaint.  This attorney's fee request is based on counsel's declaration that he spent 17 hours on Ferrantino's case at a rate of $200 per hour.  This includes 10.7 hours researching and drafting the sanctions motion and associated declarations and letters, as well as 6.3 hours drafting the motion to dismiss.  (ECF No. 13-2 at 3.)  Counsel then estimated an additional two hours would be required to reply to Ferrantino's opposition.  (Id. at 2.)  The hourly rate is eminently reasonable, and likely a bit low, given counsel's status as a partner at a firm in the Sacramento area.  See, e.g., AT&T Mobility LLC v. Yeager, 2018 WL 1567819, at *4 (E.D. Cal. Mar. 30, 2018) (finding a rate of $300 per hour appropriate for attorneys at the partner level, between $150 and $175 for junior associates, and $100 for paralegals).  Further, though the matter is non-complex, the hours spent briefing San Juan's motions are more than reasonable.  In any normal circumstances, an attorney's fee award of $3800 would most certainly be granted.  See, e.g., Corrigan, 2006 WL 3091210, at *4 (W.D. Wash. Oct. 27, 2006), aff'd sub nom. Corrigan v. King Cty. Deputy, 235 F. App'x 472 (9th Cir. 2007) (finding $10,000 attorney's fee sanction appropriate as against pro se litigant who repeatedly failed to assert claims without a reasonable inquiry and who showed income of $55,000 annum); Salman v. State of Nevada Comm'n on Judicial Discipline, 104 F. Supp. 2d 1262, 1271 (D. Nev. 2000) (awarding $4,000 in attorney's fees against pro se litigant "representing not less than forty hours of attorney time and four hours of staff time to defend this lawsuit up to this point."); Bank of Astoria v. Hobizal, 872 F.2d 426

16

(9th Cir. 1989) (finding $1,876.50 a reasonable attorney's fee sanction for frivolous filing against pro se litigant).

However, the court also takes into account Ferrantino's financial status when considering the reasonableness of any sanction. Warren, 29 F.3d 1390. Critically, Ferrantino submitted a request to proceed in forma pauperis at the start of this case. In his affidavit, he indicates his monthly income is approx. $1900, and he has monthly expenses of approx. $1450. He lists a small amount of cash on hand, but no other assets. (ECF No. 2.) Thus, the court finds it appropriate to reduce the amount of sanctions owed to $500. Gaskell v. Weir, 10 F.3d 626, 629 (9th Cir. 1993) ("[T]he sanctioned party has the burden to produce evidence of inability to pay."). Ferrantino may discuss with defense counsel on how to pay this amount, including whether an installment plan would be appropriate. Payments shall be made directly to defense counsel, who shall file notice with this court once the sanctions are satisfied. Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994) ("IFP status does not completely immunize an indigent litigant from eventual liability for costs.").

**<u>ORDER</u>**

It is HEREBY ORDERED that:

1.  Defendant's motion to dismiss the complaint (ECF No. 12) is GRANTED;

2.  Plaintiff is DENIED leave to amend;

3.  Defendant's motion for sanctions (ECF No. 13) is GRANTED IN PART; and

4.  Plaintiff is directed to promptly pay a total of $500 in attorneys' fees to defense counsel (or to contact defense counsel and reach an agreement when that amount will be paid).

5.  The Clerk of Court is instructed to close this case.

Dated: September 21, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ferr.808

17